First case on the calendar, Philana Murphy v. Institute of International Education, number 20-3632. Should I begin, Your Honor? I want you to pause for just a second until the work is distributed in the name of the counsel. You may proceed. Thank you, Your Honors. Good morning. I'm Oliver Kopel, and I represent Philana Murphy, who is the plaintiff and appellant here today. I'm joined by Daniel Schreck, my able associate, who worked on this matter extensively. I would ask the court to refer to the appendix and look at page A42, please, because I'll wait until you reach it. Thank you. But that's the agreement. That's the mediation agreement. Yes. This is the agreement, and the question before the court is, is this a binding agreement under the rulings in the Winston case of this court and the other cases that follow Winston, which is a four-part test that I'll get to. But looking at this for a moment, obviously, it's very short, and it has a limited number of provisions. And I would suggest to you, as an employment lawyer who's seen dozens and dozens of settlement agreements in employment cases, that there is no employment lawyer in this United States who would regard this as a complete settlement agreement. You would agree, though, that it doesn't include an express reservation of rights not to be bound until a further agreement is executed. Isn't that correct? It doesn't say that, but it does say, as you will know, that a full settlement agreement with applicable releases will follow. Yes, but it does not say that the parties reserve their rights not to be bound until such an agreement is executed. Isn't that correct? Yeah, it doesn't say that. That's correct. Thank you. I would just like to refer the court— If you look at it, I mean, you're saying that we should look at the agreement. I mean, there are places for all of the signatures. It is written as if it is a binding agreement. So what is the function of this document if they didn't intend to be bound? It's an attempt—it was an attempt on the part of the attorneys to agree upon certain key terms. There's no question that the terms there are important terms, but they're not— But why do you need the mediator to— Pardon me? Why do you need the mediator to sign if that's all it is? Well, that's the procedure that was used. They had a mediator who brought the parties together. But I might point out, Your Honor, if you would look for a moment at page—a few pages earlier, page 38, and you look at this affidavit of the attorney for the appellees here, he says in paragraph 3, after hours of negotiation, an agreement was reached on all terms. That's—he's referring to the agreement we just looked at. But then look at the next paragraph. It says here, the following week, Plaintiff's counsel and I negotiated the final version of the agreement and agreed on all terms. Well, you can't have it both ways. If they agreed on all terms in the earlier agreement, then there wouldn't be the later agreement which says that they agreed on all terms. Mr. Koppel, would you agree that if you took the agreement on page A42 and deleted the phrase, a full settlement agreement with applicable releases will follow, that that alone would be an enforceable agreement? No. Yes. It says in exchange for discontinuance with prejudice of the instant action and general release for all claims, the defendant will pay plaintiff one year's worth of salary, two months of COBRA, regular pay and benefit until August 23. What about that makes that not an enforceable agreement? No. It's not an enforceable agreement because if you look at the cases that are cited, there's no enforceable agreement by a court in the cases that we looked at that has only those terms. There are a host of other terms that are not included. And if you look at the fourth clause of the statute, you can't have it both ways. Could you tell me, though, what about that documented exchange of promises makes the agreement not enforceable? There's consideration given and received on both sides, and it's signed by both parties. What makes it not enforceable? You've got to look at the Winston test. The Winston test doesn't say it only has that. No, no, but I'm asking a different question. I'm just asking if you take out the one sentence, a full settlement agreement would follow, what is it, in your view, that makes the remainder not an enforceable agreement? Because the Winston case gives us the measure of a fully binding agreement. The word is binding. Is it a binding agreement? And the Winston case says, no, it's not a binding agreement if it doesn't incorporate all the significant terms. And if you look even at the cases that they cite, Aguilar and McLeod. But what's the role of the significant terms here, right? So the district court enforced this agreement, right? Not the full settlement agreement. That's correct. That's correct. So would this not be a full agreement in the absence of those terms? That's correct. It's not a full agreement because it doesn't have. Why can't these commitments be enforced against the parties to settle litigation, apart from the other terms that were added later, like the non-disparagement clause and whatnot? Because Winston teaches us that when you have a partial agreement, which is what this is, you cannot enforce it if it omits material terms. And why they call those other terms boilerplate, it's hardly boilerplate when there's a provision in the settlement agreement which was never signed. There's a provision there of confidentiality, which now the New York State legislature has ruled that confidentiality provisions have to be considered for seven days. I know that doesn't bind this. I'm just talking about how important that provision is. Then the non-disparagement provision is very important. Also, the taxation of the benefit, very important. I mean, it seems like you're suggesting that you wouldn't have authorized or advised your client to sign this agreement. But if the parties at the time identified these as the material terms, and the others are not material terms, presumably by definition, why isn't this writing a contract? I don't believe the parties did that, because the parties' own agreement, if you want to call it agreement or tentative agreement, says specifically that it's subject to a further agreement, which has to be negotiated and agreed to. The agreement itself says very specifically that it's subject to a further agreement. And if you look at the statute, it says it's subject to a further agreement? Yes. A full settlement agreement with applicable leases will follow. Right. The implication is that this is necessary. And by the way, even though the institute says that this was a full agreement, they didn't pay her. They didn't pay her the year's compensation. They didn't pay her because it wasn't what they wanted to get. They wanted to get the agreement that was negotiated at great length by counsel. And that she never signed. And again, you have to look at Winston. What constitutes a binding agreement? This may look like it's a binding agreement, but it's not. Because it doesn't include so many terms, some of which I've already mentioned. I mentioned particularly- Is your position that these other terms, the non-disparagement clause and the confidentiality and all of that, in the absence of those terms, this could never be a binding agreement? I mean, if this more abbreviated agreement had a sentence that said, we intend to be bound by these terms even though we're going to also sign a subsequent fuller agreement with additional terms, you wouldn't dispute that because it didn't have the additional terms, this could not be binding. Yes, I would dispute it because that's what the Winston- So even if this contract said, instead of saying a full agreement with applicable leases will follow, it said a full settlement agreement with applicable leases would not be bound by these terms, you would still say it would not be a binding contract. It's an ambiguous thing. What does that mean, a full agreement? The full agreement says when the money is going to be paid. The full agreement talks about taxation of benefits. By the way, this is a very important provision. Because first of all, there's a good argument in this case that there should have been no tax applied because she was recovering really for emotional distress more than for the lack of wages. But certainly the percentage that is taxed is very important. I myself have negotiated in one case for almost a year over the question of how much money should be paid without withholding and how much should be paid with withholding. So we know from Winston that preliminary agreements can be enforced, right? Like there is some agreement that can be enforced before the full settlement agreement is signed, right? No, not if that tentative agreement or whatever you want to call it, you call it an agreement. Winston teaches that that is not enough. You cannot just have an agreement. It tells us what the standards are for determining whether it's enough. But sometimes it will be enough, no? No, never would be enough. So a preliminary agreement can never be enforced until you have the full document. Well, it depends. In McLeod, for instance, it was enforced, but there were a whole series of provisions, like confidentiality, non-disparagement, allocation of taxes. If you have none of that is there, it's not an enforceable agreement. That's what Winston tells us. Can I ask you a question, with your permission, Judge Carney, because we've gone over? But are you suggesting that in an employment case, there can be no agreement, no settlement agreement without a non-disparagement provision? No, not just that. If that's the only thing missing, I would say that it could still be enforceable. But if you also have confidentiality, if you have an agreement that's the individual So a confidentiality provision is a prerequisite to an employment contract or settlement contract, that's what you're saying? What I'm saying is that if that's part of the agreement that's supposed to be entered into, it should be there. It's not there. It's a whole series. It's not one item. We have kept you. You can't look at just one item. Mr. Huff, we've kept you past your time. You're a couple minutes over here. You've reserved two minutes for rebuttal. And so we're going to hear from counsel, your opposition. Very good. Mr. Lurose. Good morning, Your Honors. Lurose of Collazo and Kyle for the appellee. The district court correctly held that the parties entered into a binding contract when both parties, both counsel and the mediator signed the mediation agreement in the basement of this very courthouse. I'm happy to go over all four Winston factors. Could you start by talking about partial performance? Because it looked to me like most of the performance occurred after Ms. Murphy attempted to repudiate the mediation agreement. So could you just describe what happened when? Sure. The timeline is mediation was held on a Friday, went past five o'clock, so business hours are over by the time the agreement is signed. Monday morning, IIE sets up the payment for the following week, which started, I suppose, the 19th through the 23rd, which is the third provision of the mediation agreement. She's not coming to work, but she's getting paid. Ms. Murphy accepted that compensation. So that was an internal setup, but they sent her the money for that? Yeah, it went through regular payroll. Essentially, even though she wasn't showing up to work, she was still getting paid and her leave balances did not go down. And how do we know she accepted that payment at that time? Direct deposit. Okay. And she doesn't attempt to return it at any point. She also received any accrued but unused vacation time, which isn't part of the agreement. That's just something New York Labor Law says she's entitled to at the time she's separated from employment. She receives that. There's no dispute that she did not receive the one year's worth of salary. The other provision is the COBRA premiums. As explained in the papers, an employer can't foist coverage upon somebody. It has to be elected. For example, Ms. Murphy could have decided, even with the two free months of COBRA, it was still economically inefficient for her because that would bar her from perhaps using a health care marketplace insurance later on. So IEE was essentially kind of passive as to COBRA that was relying on her to do that? Passive in terms to trigger the payment, yes. But they took these other two steps then before they heard that she was desiring to renege on the contract? Yes. So let me back up just for timeline purposes. The email that is sent to the district court, Judge Carter, is dated the 22nd, which is Thursday. That's the date that Ms. Murphy was going to attend her pro bono counsel's office, again to sign the fleshed out agreement. I get the ECF bounce as an attorney to be noticed, read it. At that point, we were still under the impression that she would be coming in. I'm the one that alerted her pro bono counsel of this. So that's the first I found out, the first her pro bono counsel found out, and the first my client found out. And the steps to effectuate the payment of the wages for the week were done Monday, several days before. So steps were taken? Yes. But from her perspective, she wanted to continue working there, right? So she would have just been receiving the salary that she was getting all along, right? Would it have been obvious from her perspective that she was getting something pursuant to the agreement that she wouldn't otherwise get? Well, she didn't show up to work for that week, so she wouldn't have been entitled to this. Well, she called her lawyer and said, I want to go to work. And I guess called a couple other people, right? And they said, no, you can't show up. So it seemed like there was some kind of dispute about that. But I don't know. From her perspective, maybe she thought she would eventually be able to go back. I can't speak to her perspective. I know that... Well, right. So this analysis usually is about the other contracting party accepting a benefit of the agreement. But I'm just saying, it's not totally obvious that that was a benefit that only came under the agreement, because the benefit you're describing is just paying for the salary she would have normally, even if she was continuing to work there. It's paying her wages, yes. But to earn the wages, you have to work. No, I understand. I understand that. And she... So if she thought she... The argument is made by Murphy that she thought she was still an employee. There's no real explanation of why, if she didn't think this was binding at all, she didn't simply just show up to work on Monday morning. But obviously, something happened, right? She wanted to show up to work. She made these calls to see if she could. She said she... I believe she called her union rep, and she calls her attorney. Again, they wouldn't have been in office hours in between the time the agreement is signed and the time she would have shown up to work, because there were no business hours between then. So in theory, she should have... If she thought she was still employed, she should have been at work Monday morning. Well, fine. But so that's the conduct you're relying on. It's not that she got her wages, it's that she got the wages and didn't show up to work. So you're saying if she showed up at the door instead of making these phone calls, it would have showed something completely different? I think it would have showed her understanding that she wasn't still employed. Again, that didn't happen. She does say she tried to log in remotely from a laptop. We have submitted emails showing that she was not authorized to work remotely at that time. So any attempt there was just, I guess, not in good faith. The payment that she got for pursuant to number three, which, as your honors should take note, it's in a different handwriting than the rest of the draft of the mediation agreement initial, which just shows that both parties had a chance to participate in the drafting of this agreement. I note that just because Ms. Murphy now makes the argument that pre-printed terms such as it's hereby agreed or the agreement has been reached on all issues shouldn't count because it was on the agreement without the parties, I guess, actively writing it. But she had a chance to cross anything out and, of course, not to sign it. But going back to the partial performance, yes, she received the wages for the week of the 19th to 23rd. She wouldn't have otherwise been entitled to them because she did not work. But it was a direct deposit. It wasn't that anyone handed her a check, right? I mean, she would have had to then make, at some point, some effort to refund it, which I take it she didn't do. But all of that was kind of automatic. It wasn't particularly significant in some ways. It wasn't automatic in the sense that IAEA had to authorize it because she didn't show up to work. She would have otherwise just been marked absent without excuse that she wouldn't have been paid for it. It was automatic in the sense that no further direct deposit agreement had to be signed or anything. It wasn't, you know, she got a check and signed it, if that's what Your Honor is asking. Could you address, go ahead. Can I ask about what happened before she signed the behavioral agreement? So she says the mediator tells her that if she doesn't sign the mediation agreement, she's going to be stuck in a room filled with white men who would question every aspect of her life for hours. I mean, that's a pretty nasty thing to say that she can't possibly get a fair hearing. I mean, isn't there some level of that kind of, those kinds of statements against somebody saying they can't possibly get anything beyond this agreement that we might conclude that it wasn't freely signed? I think that's a horrendous thing to say, especially using her race or sex as a weapon against her in these negotiations. Your Honors are probably familiar with the downstairs rooms that are used for these types of mediations. Myself and my clients were in one room that was not even adjacent to the room the plaintiff and her counsel were in. I can't personally say that that didn't happen because I was never in the same room with the plaintiff after basically a hello and the mediator did an introduction. The mediator even, she wouldn't let us have lunch or go to the bathroom at the same time. But your point is this is not duress, I assume. We're not asking you to be a fact witness. Sure. As a matter of law, the mediator and her counsel can't put her under duress. But if you witness them pressuring her and let them go forward or encourage them or don't stop them from pressuring her, restatement seems to indicate that maybe the party, your client could be held responsible for that kind of duress. I believe Murphy pivoted hard on her, who was doing the actions that allegedly put her under duress. If you read her declaration, it doesn't mention myself or my client at all. She says the mediator said these things about white men. Maybe you wouldn't be liable for duress and maybe we had to work that out. But what would happen? Let's say that the mediator really did go really hard at the idea that the whole system is rigged against her and she can't possibly get a fair hearing. And after all of that, that's when she decided to sign the agreement. And let's say we even had some reason to believe that in the absence of that, she wouldn't have signed it. I mean, what should a court do faced with those kinds of circumstances? I think unfortunately, as a matter of law, the duress can't be found when it's either a third party or the party's own counsel. So the duress has to come from the opposing party. I will state that in the reply brief for the first time, counsel alleges that those comments emanated from me, which I am disgusted by. There's no basis in Ms. Murphy's statements for that. There's no basis anywhere for that. And essentially, it is a cheap shot taken at me when I would never do anything like that. And because the alleged comments didn't emanate from me or my client, as a matter of law, they can't be held to the duress. Thank you very much. Thank you for your argument. We have reviewed your papers and we'll hear rebuttal now. Thank you, Your Honor. Thank you. First on the question of duress, Your Honor, if you read her account of what happened here, what does it remind you of most? I'll tell you what it reminded me of most was a questioning by the police in a station getting a confession. When you look at what this woman, a relatively young woman, the pressure she was under from the mediator, and if it was the mediator, I would suggest to you if it was her own counsel, I think there may be some question. But this was the mediator. And by the way, her own counsel was an appointed counsel, was not someone she chose, was appointed by the court. Well, could you address the argument that opposing counsel just made? So if it's the mediator and it's not the opposing party. So let's just assume for the time being that we think that the statements make a difference. What should we do with that? Because it's not the opposing party, the counterparty on the contract that applied the duress or the pressure. It's the mediator at a mediation proceeding. In my opinion, Your Honor, if there was duress and duress came from the mediator, this agreement should not be enforced. If the mediator appointed by the court applied that duress. I understand that's your opinion. But I mean, do we have authority for that idea that we that we would invalidate a contract because of third parties? I think that I think there is. Well, I don't have a case to cite, Your Honor. But I think that the fact of the matter is that if the party is under duress, it's not an admission of free will. If she did not consent to this because of free will, it should not be enforced against her. And let me say just quickly, because I have limited time. On that point, I mean, even though they are, if this is what happened, it's a reprehensible comment. Is it really strong enough to overcome her free will? It's not just this comment. It's a whole way the thing was treated. She asked to have the weekend. They said, no, the mediator didn't give her the weekend. If this mediator should have given her the weekend off, her mother told her she shouldn't sign anything. As I said, the thing that this reminds me of most is a coercive investigation or a coercive questioning by the police. It should not, if someone is under duress, they cannot give their assent as a matter of law. They're not giving their consent with free will. And that has to be there. Thank you, Mr. Koppel. Thank you. You're over your time. And we have your papers. We'll review them carefully and we'll reserve decision. Thank you. Thank you.